UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW

| | |
|---|---|
| PRESERVER, LP<br><br>                      Plaintiff,<br><br>       -against-<br><br>CREATIVE WEALTH MEDIA FINANCE CORP;<br>and JASON CLOTH<br><br>                  Defendants. | Civil Case No. 21-CV-2456 (JPO)<br><br>ECF Case<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Preserver, LP ("Plaintiff"), for its Complaint against defendants Creative Wealth Media Finance Corp. and Jason Cloth (collectively, "Defendants"), respectfully alleges as follows:

### NATURE OF ACTION

1.      This action arises out of Defendants' breach of their contractual obligation to repay a film finance loan made by Plaintiff.

### PARTIES, JURISDICTION AND VENUE

2.      Plaintiff is a Delaware limited partnership with its principal place of business in Memphis, Tennessee.  Each of Plaintiff's partners is a citizen of the United States of America.

3.      Upon information and belief, Defendant Creative Wealth Media Finance Corp. is a Canadian corporation with its principal place of business in Ontario, Canada and transacting business in the State of New York.

4.      Upon information and belief, Defendant Jason Cloth is an individual residing in Ontario, Canada and transacting business in the State of New York.

7020-2

5.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because this action is between a citizen of the United States of America and citizens of Canada and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over Defendants because Defendants expressly submitted to the jurisdiction of the New York federal courts under the subject Term Sheet (as defined in Paragraph 8 below).  Specifically, Paragraph 17 of Schedule C to the Term Sheet states: "Financier and Lender irrevocably attorns and submits to the non-exclusive jurisdiction of the state or federal court located in New York, New York (or in any appellate courts thereof) with respect to any matters arising out of this Agreement and waives objection to the venue of any proceeding in such court or that such court provides an inconvenient forum."  Moreover, upon information and belief, Defendants have at all relevant times been conducting substantial business in the State of New York.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because defendants are subject to the Court's personal jurisdiction with respect to this action.

<u>**FIRST CLAIM**</u>
**(Breach of Contract)**

8.      Plaintiff and Defendants are parties to the binding written "Financing Term Sheet," dated as of November 27, 2019 (the "Term Sheet"), a true and correct copy of which is attached hereto as Exhibit "A."

9.      Pursuant to the express provisions of the Term Sheet, Plaintiff loaned Defendant Creative Wealth Media Finance Corp. the sum of $2,500,000 (the "Loan").

7020-2

10.    Also pursuant to the express provisions of the Term Sheet, Defendants jointly agreed to repay the entirety of the Loan plus 15% interest (collectively, the "Loan Repayment Amount"), by no later than November 27, 2020 (the "Repayment Deadline").

11.    Also pursuant to the express provisions of the Term Sheet, Defendants agreed to pay additional default interest at a rate of 1.5% per month in the event of a failure to repay the Loan Repayment Amount by the Repayment Deadline.

12.    Plaintiff has performed its obligations under the Term Sheet.

13.    Defendants, on the other hand, have breached the Term Sheet by failing and refusing to timely repay the Loan Repayment Amount.  Specifically, although Plaintiff has received partial payment in the amount of $242,309, the overwhelming majority of the Loan Repayment Amount remains unpaid.

14.    As a result of Defendants' breach of the Term Sheet, Defendants have caused damage to Plaintiff in the amount of the remaining Loan Repayment Amount plus default interest at the rate of 1.5% per month from the Repayment Deadline.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an order and judgment in favor of Plaintiff against Defendants, containing the following relief:

1.    On its First Claim for Breach of Contract, awarding Plaintiff damages in amount to be established at trial but no less than $2,758,000 to compensate Plaintiff for the monetary losses it has suffered;

2.    Awarding Plaintiff 9% interest on its damages pursuant to CPLR §§ 5001-5003, 5004;

7020-2

3.    Awarding Plaintiff its prevailing party attorneys' fees and costs pursuant to the

Term Sheet; and

4.    Granting Plaintiff such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated:  April 6, 2021                    LAVELY & SINGER
        Los Angeles, CA                  PROFESSIONAL CORPORATION

                                            /s/ David B. Jonelis
                                 By: _____
                                            Andrew B. Brettler (AB2662)
                                            David B. Jonelis (*pro hac vice*)
                                            2049 Century Park East, Suite 2400
                                            Los Angeles, California 90067
                                            Tel.: (310) 556-3501
                                            Email: abrettler@lavelysinger.com
                                                     djonelis@lavelysinger.com
                                            *Attorneys for Plaintiff Preserver, LP*

7020-2

# EXHIBIT A

### THE MOTION PICTURE "BOMBSHELL"
### FINANCING TERM SHEET

This term sheet (the "Financing Term Sheet") dated as of November 27, 2019 sets to writing the agreement by and among Creative Wealth Media Finance Corp., a Canadian corporation ("Creative"), Hudson Private Corp., and Jason Cloth ("Cloth"), an individual, with regard to the subject matter herein below.  The parties may hereinafter be referred to individually as a "Party" or collectively as "Parties."

**RECITALS**

WHEREAS Lucite Desk LLC, a Delaware limited liability company ("Borrower") entered into a Co-Production and Distribution Agreement with Lions Gate Films Inc. ("Studio"), dated as of December 1, 2018 (the "Co-Production and Distribution Agreement"), wherein Borrower and Studio agreed to co-finance and distribute that certain third-party produced live-action motion picture formerly entitled "Fair and Balanced" and currently entitled "Bombshell" (the "Picture");

AND WHEREAS, Creative and Borrower entered into a Term Sheet Financing for Motion Picture Project Entitled "Fair and Balanced" dated October 23, 2018 ("Master Term Sheet"), and attached hereto as Schedule A, to finance the Picture.

AND WHEREAS, Creative and Borrower entered into a Loan and Security Agreement, dated as of October 17, 2018, as amended on January 23, 2019 ("Loan and Security Agreement"), and attached hereto as Schedule B.

AND WHEREAS, Creative, and Financier entered into a participation agreement (the "Participation Agreement") dated the date hereof and attached hereto as Schedule C, in connection with the Master Term Sheet, wherein Financier agreed to advance a portion of Creative's financing obligations (the "Creative Financing") pursuant to the Co-Production and Distribution Agreement and the Master Term Sheet concerning the Picture.

NOW THEREFORE, this Financing Term Sheet is made by and between the Parties in consideration of the mutual undertakings, agreements and acknowledgements contained in this Financing Term Sheet and for other good and valuable consideration the sufficiency and receipt of which each Party hereto acknowledges.

| Funding | $2,500,000 USD (the "Participation Advance") shall be advanced by Financier directly to Creative as a loan participation, to partially fund the Creative Financing.    Financier further acknowledges that Borrower disbursed an amount equal to seven and a half percent (7.5%) of the Participation Advance (the "Facilitation Fees") to Creative. It should be noted that payment of the Facilitation Fees does not reduce any principal or interest payments due to Financier. |
|---|---|

| Term | The Participation Advance shall be repaid on or before the later of (i) one (1) year from the date hereof, or (ii) 90 days after the Picture is released to the public (the "Repayment Date"). |
|---|---|
| Financier Fixed Return and Additional Interest | Financier shall be entitled to a fixed rate of return of 15 per cent (15%) (the "Financier Fixed Return"), on the Participation Advance made by Financier under this Financing Term Sheet.<br><br>Should repayment not come before the Repayment Date, parties agree that Financier shall be paid additional interest of 1.5% per month, commencing on the first business day of the next month, on the entire outstanding balance, until such time as all amounts due are fully repaid. |
| Condition Precedents | The commencement of this Financing Term Sheet and all of Financier's obligations will be contingent on the following: (i) Financier shall receive the most recent report from the collection account; (ii) Financier shall receive latest quarterly financial information about the Picture directly from BRON Studios; (iii) the satisfaction of diligence by Financier or its delegate and (iv) Creative shall provide a letter of instruction to a third party collection agent that Financier shall have access to view the collection account and receive all disbursements directly from the collection agent. |
| Information Rights | Financier shall receive: (i) monthly reports from the Studio's collection account within 20 calendar days of month-end; (ii) all reports and deliverables pursuant to (A) Section 4.7 "Reporting" of the Loan and Security Agreement (executed between Lucite Desk LLC and Creative Wealth Media Finance Corp. on October 17, 2018), and (B) Section 8 ("Reporting Periods") and Section 9 ("Audit Rights") of Exhibit GR/DE of the Co-Production and Distribution Agreement (executed between Lucite Desk LLC and Lions Gate Films Inc. on December 1, 2018) within 5 calendar days of receipt by Creative; and (iii) quarterly financial information about the Picture directly from BRON Studios within 45 days of the end of the fiscal quarter. |
| Disposition of Gross Receipts | Financier will be entitled to recoup the Participation Advance, the Financier Fixed Return plus any additional interest earned in shared first position from all adjusted gross receipts (i.e. after distribution fees, expenses, CAM Fees, residuals and sales agent fees) derived from exploitation of the Picture and ancillary rights worldwide. |
| Representations and Warrants | The Parties represent and warrant that: (a) each has the full right, power and authority to enter into and perform this Financing Term Sheet; and (b) no Party has assigned, hypothecated, encumbered or otherwise transferred (or entered into an agreement to do any of the foregoing) any rights contemplated hereunder to any other party or person.  Financier further represents, warrants and agrees that it has the ability to fully perform all of |

| | |
|---|---|
| | its financial obligations hereunder, and that it shall do so in strict conformity with all applicable securities laws, regulations and treaties. |
| Governing Law and Dispute Resolution: | This Financing Term Sheet shall be governed by the laws of the State of New York and the laws of the United States applicable therein. In the event of a dispute arising hereunder, the prevailing party shall be entitled to recover its reasonable outside attorneys' fees and costs. |
| Miscellaneous: | It is expressly agreed that this Financing Term Sheet is an agreement between separate entities.  The Parties each acknowledge that they are independent contractors and that solely by entering into this Financing Term Sheet no partnership, joint venture, agency or employment relationship has or will be created by this Financing Term Sheet.  No Party hereto shall have the right or authority to create or assume any obligations in any other Party's name or on any other Party's behalf, whether express or implied, or act or purport to act as any other Party's agent or legally empowered representative for any purpose whatsoever, without the other Party's prior written consent in each instance.  No Party shall be liable to any third party in any way for any engagement, obligation, commitment, contract, representation, transaction, act or omission to act of the other Party(ies). <br><br> This Financing Term Sheet contains the entire understanding of the Parties relating to its subject matter and supersedes and replaces all prior agreements and understandings, written or oral.  No change or modification of this Financing Term Sheet will be binding upon any Party unless it is made by a written instrument signed by all Parties.  A waiver by any Party of any provision of this Financing Term Sheet in any instance shall not be deemed to waive such provision for the future.  This Financing Term Sheet may be executed electronically and in counterparts, all of which together shall constitute a single Term Sheet.  Signatures obtained via electronically transmitting a copy of this Financing Term Sheet with an attached portable document file ("PDF") or electronically executed and thereafter sent by PDF shall be valid and enforceable as if signed by the that Party in person. |

[Signature page to follow]

[Signature page to Bombshell Financing Term Sheet]

**IN WITNESS WHEREOF,** the Parties hereto have executed this Financing Term Sheet as of the date set forth above by their duly authorized representatives with full rights, power and authority to enter into and perform this Financing Term Sheet.

**CREATIVE WEALTH MEDIA FINANCE CORP**

By: _____

Name: Jason Cloth
Its:    Director

**PRESERVER, LP**

By: _____

Name: Floyd Isler
Its:  Managing Member of General Partner

**JASON CLOTH**

By: _____

**SCHEDULE A**

**MASTER TERM SHEET**

**SCHEDULE B**

**LOAN AND SECURITY AGREEMENT**

**SCHEDULE C**

**BOMBSHELL PARTICIPATION AGREEMENT**

CREATIVE WEALTH MEDIA FINANCE CORP.
PARTICIPATION AGREEMENT

**AGREEMENT** made this 27th day of November 2019, by and between **CREATIVE WEALTH MEDIA FINANCE CORP.**, a Canadian corporation, provincially registered in the Province of Ontario with its office at 151 Bloor Street West, Suite 700, Toronto , Ontario M5S 1S4 (hereinafter referred to as "**Lender**") and Preserver, LP, a Delaware limited partnership with its offices at 8700 Trail Lake Drive West, Suite 105, Memphis, TN 38125 (hereinafter referred to as "**Financier**").

**WHEREAS:**

A.   Lender has entered into a term sheet agreement (hereinafter referred to as the "**Master Term Sheet**") with Lucite Desk LLC, a Delaware limited liability company (hereinafter referred to as the "**Borrower**") in respect of a motion picture production entitled "Bombshell" (formerly known as "Fair and Balanced") (hereinafter referred to as the "**Picture**"), a true copy of said Master Term Sheet having been delivered to Financier, and Financier having independently reviewed and approved same;

B.   Pursuant to the terms of the Master Term Sheet (together with any amendments, supplements, extensions and renewals thereof, and any related agreements, security agreements, documents and instruments, hereinafter collectively referred to as the "**Financing Agreements**"), Lender has entered into certain financing arrangements and has extended a loan of **US$15,393,011** to the Borrower (hereinafter referred to as the "**Loan**"), upon the collateral as defined in Sections 5.1 and 5.2 of the Loan and Security Agreement between Borrower and Lender, dated October 17, 2018 and amended on January 23, 2019, including the present and future accounts of the Borrower (the "**Collateral**"); and

C.   Pursuant and subject to the term sheet agreement, entered into between the Financier and Lender dated as of November 27, 2019 (hereinafter referred to as the "**Financing Term Sheet**") attached hereto and incorporated into this Agreement by way of Schedule "A", Financier wishes to acquire from the Lender, upon the terms and conditions hereinafter set forth, an undivided fractional interest in the Loan, and to the extent necessary to repay the Participation (as hereinafter defined), an undivided fractional interest in the Collateral.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and promises herein contained, and for other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged by each of the parties), the parties hereto agree as follows:

1.   Lender hereby sells to the Financier and the Financier hereby agrees to purchase from the Lender an undivided fractional interest in the aforementioned Loan (the "**Participation**"). The Participation will be pro rata based on the amount offered by Financier (hereinafter referred to as the "**Participation Advance**") as a percentage of the total amount offered by the Lender to the Borrower under the Loan.

The relationship between Lender and Financier is and shall be that of a seller and purchaser of an undivided fractional interest (i.e., an outright sale and assignment by Lender to Financier of an interest in the Loan, together with the Collateral therefor), not a debtor-creditor relationship. Accordingly, Lender has not guaranteed repayment to Financier of, nor agreed to repurchase from Financier, any portion of the Participation at any time.

- 2 -

2.  Financier agrees that Lender will retain in Lender's name, but to the extent of the Participation, on behalf of Financier, all of the obligations of the Borrower to Lender arising out of the Financing Agreements, and Lender will, in its name, collect and receive payments with respect to the Loan and of any amounts paid or recovered from (a) the Borrower pursuant to the Financing Agreements, (b) any guarantor or other entity liable in respect of the obligations of the Borrower under the Financing Agreements, or otherwise, and (c) the recovery or realization on any Collateral or other property, rights and claims in favour of Lender or which may be received by or may come into the possession of Lender; provided that any such amounts are applicable to the payment or discharge of any of the obligations of the Borrower pursuant to the Financing Agreements or otherwise (all of the foregoing being hereinafter called "**Collections**").

3.  Financier shall participate in the Collections and be repaid principal and interest and share in "Adjusted Gross Revenues" derived from exploitation of the Picture, on and subject to the terms provided in Schedule "A" to the extent of its Participation.

    To the extent of the Participation, Lender is and shall be a trustee and agent for Financier in administering and servicing the Financing Agreements and all rights, remedies and benefits thereunder, including making the Loan, the perfection of security interests and other liens in the Collateral, receiving Collections, execution of agreements in connection therewith and the exercise of all other rights and remedies of a lender and secured party with respect thereto.

    Lender shall have the obligation to account to Financier for Financier's share of the Collections. All Collections and/or payments due to Financier with respect to Financier's interest in the Loan, shall be paid to Financier directly by collection agent. Any other funds due to the Financier including proceeds of Collateral and claims with respect thereto, which are received by Lender shall be held in trust for Financier and deposited by Lender in one or more of its bank accounts and applied as provided herein.

4.  Lender's books and records showing the account between Lender and the Borrower and statements of account rendered to Financier shall be considered accurate unless objected to by Financier within sixty (60) days from any such date of such books, records and statements in question.

    Lender agrees to pay and otherwise account to Financier on or about fifteen (15) calendar days after Lender's actual receipt of amounts due and payable to Lender pursuant to the Financing Agreements, amounts due and payable to Financier, pursuant to the Financing Term Sheet in respect of the Participation, as such amounts are earned and paid by the Borrower to Lender, pursuant to the terms of the Financing Agreements.

5.  Financier represents and warrants as follows to the Lender at the date of this Agreement and at the date the Financier provides the amount of the Participation Advance to Lender by way of certified cheque, bank draft or wire transfer or such other method of payment acceptable to Lender, or such other date and time as may be determined by Lender (hereinafter referred to as the "**Closing Date**") and acknowledges and confirms that the Lender is relying on such representations and warranties in connection with this Agreement:

    Financier is entitled to receive all payments hereunder without Lender being required to deduct or withhold any amount therefrom on account of duties, taxes, levies, imports, fees, interest or penalties (each a "**Tax**" and collectively "**Taxes**"). If any deduction or withholding for Taxes is required by law

Bombshell Participation Agreement

- 3 -

or the administrative practice of any taxation authority, Canadian or otherwise, Lender shall be entitled to make such deduction or withholding from any payment hereunder and to pay the full amount so deducted or withheld to the relevant taxation authority in accordance with applicable law. Financier shall notify Lender immediately if any Taxes are required to be deducted or withheld upon any payment to Financier hereunder and shall provide any certificates, Tax forms or other information reasonably requested by Lender in connection with the reporting or payment of any Taxes relating to this Agreement. Financier shall indemnify Lender on demand on an after-Tax basis for all losses, claims, liabilities, Taxes or expenses incurred by Lender as result of (i) any failure by the Financier to comply with any Tax reporting or payment requirements relating to this Agreement; (ii) any inaccuracy of the foregoing representation and warranty and (iii) any payment by Lender to Financier hereunder with the required deduction or withholding for Taxes.

(b)     The Participation has not been made through, or as a result of, and is not being accompanied by, (i) a general solicitation, (ii) any advertisement including articles, notices or other communications published in any newspaper, magazine or similar media or broadcast over radio or television, or (iii) any seminar or meeting whose attendees have been invited by general solicitation or general advertising.

(c)     None of the amounts that the Financier is committing to pay to the Lender are to the knowledge of the Financier, proceeds obtained or derived, directly or indirectly, as a result of illegal activities.

(d)     If the Financier is an individual, he or she is of legal age and is legally competent to execute, deliver and perform his or her obligations under this Agreement. If the Financier is not an individual, (i) it has the legal capacity and competence to execute, deliver and perform its obligations under this Agreement; and (ii) the execution and delivery of and performance by the Financier of this Agreement have been authorized by all necessary corporate or other action on the part of the Financier;

(e)     If the Financier is committing on its own behalf, this Agreement has been duly executed and delivered by the Financier, and constitutes a legal, valid and binding agreement of the Financier enforceable against him, her or it in accordance with its terms;

(f)     The execution and delivery of and performance by the Financier of this Agreement does not and will not (or would not with the giving of notice, the lapse of time or the happening of any other event of condition) result in a breach or violation of or a conflict with, or allow any other person to exercise any rights under any of the terms or provisions of the Financier's constating documents or by-laws, if applicable, or any other contract, agreement, instrument, undertaking or covenant to which the Financier is a party or by which it is bound;

6.     Financier hereby agrees the provisions related to the recuperation of and/or amount entitled to in the Financing Term Sheet, collectively, represent all material aspects and/or rights associated with the Loan. As such, Lender agrees and shall not, without prior written consent in each instance, amend, alter, modify, waive or release any material right, aspect of, or relating to provisions listed in the Financing Term Sheet. Furthermore, Financier confirms and acknowledges that the Lender is relying on the Financing Term Sheet in connection with the execution of this Agreement.

7.     Financier shall pay all stamp duty, documentation, registration, transfer or other like Taxes, if any, which may now or hereafter be imposed in connection with this Agreement or the purchase of the

Bombshell Participation Agreement

- 4 -

Participation and shall indemnify Lender on demand on an after-Tax basis against any liability resulting from any delay or failure by Financier to pay such Taxes. Financier's obligations under this Section shall survive the termination of this Agreement.

8.    Financier hereby agrees that Lender shall have the right to carry out the provisions of the Financing Agreements with the Borrower, and to exercise all rights and privileges accruing to it by reason of the provisions thereof, and to enforce its rights thereunder for the joint benefit of Lender and Financier, according to its discretion and the exercise of its business judgment, in accordance with its normal operating procedures.

Financier further acknowledges the risks inherent in making loans and/or equity investments in the Picture and the related risks inherent in developing, producing, and marketing the Picture, including but not limited to the possibility of cost overruns, lower sales than anticipated and loss of financing. Lender makes no representation or warranty as to the commercial release of the Picture or the amount of proceeds, if any, to be received from exploitation of the Picture. There is no assurance that Financier will earn a profit from or recoup its Participation. Lender agrees that it will use normal prudence and judgment in the servicing of the account and in the carrying out of the terms of the Financing Agreements. Lender shall not have any liability to Financier with respect to any action taken or omitted by Lender, its employees or agents, in connection with the Financing Agreements or for any error in judgment except for its own gross negligence or willful misconduct. Lender agrees that at any time and from time to time during normal business hours, it will permit Financier or its agent to examine Lender's books, records and accounts relating to the Collateral and the Financing Agreements and it will upon request furnish Financier with such information requested as it may have or be reasonably able to obtain with respect to the Collateral or any other matter connected with the Financing Agreements and with copies of all papers and documents relating to the Collateral and the transactions in them and with financial statements and audit reports showing the status of the Collateral. Financier agrees that it will keep all such information confidential.

9.    Lender shall not, without the prior written consent of Financier, offset any claim or demand in favour of Lender or of any other client of Lender pertaining to indebtedness or obligations of Borrower wherein Financier does not participate, against or to the detriment of Financier, Financier shall not, without the prior written consent of Lender, offset any claim or demand in favour of Financier against or to the detriment of Lender or to the detriment of any credit balances for or to the account of the Borrower. In the event of any claim or action arising out of this Agreement, both Lender and Financier agree not to deduct, counterclaim or set-off any amounts which may be owed on account of other dealings between them; and, similarly, no amounts owing under this Agreement shall be deducted counterclaimed or set-off on account of other dealings between Lender and Financier.

10.    This Agreement shall be binding upon and inure to the benefit of the successors and permitted assigns of the parties hereto.

11.    Financier shall not sell, pledge, assign, sub-participate or otherwise transfer its rights under this Participation Agreement, the Collateral, or the Collections, without the prior written consent of Lender.

Bombshell Participation Agreement

- 5 -

12.     Nothing contained herein shall confer upon Lender or Financier any interest in, or subject either of them to any liability for, or in respect of the business, assets, profits, losses or liabilities of the other, except only as to the Participation.

14.     All notices, requests and demands to or upon the respective parties hereto shall be deemed to have been duly given or made: if by hand, immediately upon sending; if by overnight delivery service, one (1) day after dispatch; and if mailed by registered mail, return receipt requested, five (5) days after mailing. All notices, requests and demands are to be given or made to the respective parties at the address set forth herein;

        If to Lender, to the attention of:

        Creative Wealth Media Finance Corp.
        151 Bloor St West Suite 700, Toronto, Ontario M5S 1S4
        Attention: Jason Cloth

        If to Financier, to the attention of:

        Preserver, LP
        8700 Trail Lake Drive West, Suite 105
        Memphis, TN 38125
        Attention: Floyd Tyler

15.     Each of the parties hereto confirms that it has no loans or financing transactions with the Borrower, or any guarantor except those transactions which are the subject of this Agreement or have been disclosed in writing to the other party and each agrees not to enter into any financing arrangement with any of them without notifying the other party hereto. Financier shall not cause its subsidiaries and affiliates not to contact, directly or indirectly, any Borrower or any guarantor, for the purpose of soliciting or taking away the financial or other services furnished by Lender to the Borrower.

16.     In the event Lender should at any time terminate the Financing Agreements for any reason it shall promptly notify Financier thereof and this Agreement shall automatically terminate effective upon the effective date of the termination of the Financing Agreements. In addition, Lender shall have the right to purchase the Participation for the full amount thereof, together with accrued interest and concurrently therewith terminate this Agreement effective at the end of the initial term of the Financing Agreements upon at least thirty (30) days prior written notice. Termination of the Participation Agreement shall not affect the respective rights or obligations hereunder incurred prior to the effective date of such termination including obligations to participate in post-termination Advances in the event of liquidation.

17.     This Agreement will be governed by, interpreted and enforced in accordance with the laws of the State of New York and the laws of the United States applicable therein without regard to the conflict of law principles thereof. Financier and Lender irrevocably attorns and submits to the non-exclusive jurisdiction of the state or federal court located in New York, New York (or in any appellate courts thereof) with respect to any matters arising out of this Agreement and waives objection to the venue of any proceeding in such court or that such court provides an inconvenient forum.

Bombshell Participation Agreement

- 6 -

18. Financier will execute, deliver, file and otherwise assist the Lender in filing any reports, undertakings and other documents required in connection with this Agreement.

19. The following Schedules are incorporated into and form an integral part of this Agreement, and any reference to this Agreement includes the Schedules:

| Schedule "A" | Financing Term Sheet |
| Schedule "B" | Payment Information |

**Assignment**

This Agreement becomes effective when executed by all of the parties to it. After that time, it will be binding upon and enure to the benefit of the parties and their respective successors, heirs, executors, administrators and legal representatives. This Agreement is only transferable and/or assignable by the Lender with written consent of the Financier.

**Entire Agreement**

This Agreement constitutes the entire agreement between the parties with respect to the transactions contemplated by it and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties. There are no representations, warranties, covenants, conditions or other agreements, express or implied, collateral, statutory or otherwise, between the parties in connection with the subject matter of this Agreement, except as specifically set forth in this Agreement. The parties have not relied and are not relying on any other information, discussion or understanding in entering into and completing the transactions contemplated by this Agreement.

**Time of Essence**

Time is of the essence in this Agreement.

**Language of Documents**

It is the express wish of the parties to this Agreement that this Agreement and all related documents be drafted in English. Les parties aux présentes conviennent et exigent que cette convention ainsi que tous les documents s'y rattachant soient rédigés en langue Anglais.

**Execution by Facsimile and Counterparts**

This Agreement including the schedules may be executed in any number of counterparts (including counterparts by facsimile) and all such counterparts taken together will be deemed to constitute one and the same document.

Bombshell Participation Agreement

**IN WITNESS WHEREOF**, the parties have executed this Agreement to be effective as of the day and year first written above.

CREATIVE WEALTH MEDIA FINANCE CORP.

Per:

Name: Jason Cloth
Title:   Director

PRESERVER, LP

Per:

Name:  Floyd Tyler
Title:  Managing Member & General Partner

Bombshell Participation Agreement

- 8 -

SCHEDULE "A"

***FINANCING TERM SHEET

Bombshell Participation Agreement

- 9 -

**\*\*\*\* SCHEDULE "B"**

**PAYMENT INFORMATION**

The Participation Advance may be included with the executed Participation Agreement by certified cheque or bank draft payable to CREATIVE WEALTH MEDIA FINANCE CORP., 151 Bloor Street West, Suite 700, Toronto, Ontario M5S 1S4 or wired in immediately available funds to Creative Wealth Media Finance Corp. as follows:

**US FUNDS:**

| | |
|---|---|
| **Bank:** | TD Canada Trust |
| **Address:** | 2453 Yonge St., Toronto, Ontario, M4P 2H6 |
| **Transit #:** | 00572 |
| **Bank #:** | 004  SWIFT TDOMCATTTOR |
| **Account Name:** | Creative Wealth Media Finance Corp. |
| **Account #:** | 7301467 |
| **Office Address:** | 151 Bloor Street West Suite 700, Toronto, Ontario M5S 1S4 Tel: 416-410-6423 |

Bombshell Participation Agreement