| UNITED STATES DISTRICT COURT |  |
|---|---|
| SOUTHERN DISTRICT OF NEW YORK |  |
| PRESERVER, LP, | No.: 21-cv-2456(JPO) |
| Plaintiff, |  |
| -against- |  |
| CREATIVE WEALTH MEDIA FINANCE CORP and JASON CLOTH |  |
| Defendants. |  |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**HERRICK, FEINSTEIN LLP**
William R. Fried
Shivani Poddar
Joshua S. Stricoff
2 Park Avenue
New York, New York 10016
(212) 592-1400

*Attorneys for Defendants Creative Wealth Media Finance Corp and Jason Cloth*

# TABLE OF CONTENTS

**PAGE NO(S).**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................1

BACKGROUND .....................................................................................................................2

       A.      The Allegations of the Amended Complaint ........................................................2

       B.      The Documents Annexed to the Complaint.........................................................2

       C.      Additional Operative Agreements ......................................................................5

LEGAL STANDARD..............................................................................................................7

ARGUMENT...........................................................................................................................7

       I.      Plaintiff Fails to State a Claim for Breach of a Loan Agreement .......................7

       II.     Even if the Participation Agreement Were a Loan
                Agreement, Plaintiff Still Fails to State a Claim for Breach
                of Contract for Nonpayment ..............................................................................10

CONCLUSION......................................................................................................................12

# TABLE OF AUTHORITIES

**PAGE NO(S).**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................... 7, 10

*Balk v. New York Inst. of Tech.*,
    683 F. App'x 89 (2d Cir. 2017) ................................................................................. 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................. 2, 7

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*,
    773 F.3d 110 (2d Cir. 2014) ...................................................................................... 8

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch,
    Pierce, Fenner & Smith, Inc.*,
    232 F.3d 153 (2d Cir. 2000) ...................................................................................... 8

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010) ...................................................................................... 7

*Natwest USA Credit Corp. v. Alco Standard Corp.*,
    858 F. Supp. 401 (S.D.N.Y. 1994) ............................................................................. 9

*Owolabi v. Bank of Am.*,
    18-CV-3991 (AJN), 2019 WL 463849 (S.D.N.Y. Feb. 6, 2019) ............................... 7

*Poindexter v. EMI Record Grp. Inc.*,
    No. 11 Civ. 559 (LTS), 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ...................... 7

*Riverside S. Plan. Corp. v. CRP/Extell Riverside, L.P.*,
    60 A.D.3d 61 (1st Dep't 2008), aff'd, 13 N.Y.3d 398, 920 N.E.2d 359 (2009) ......... 8

*Wendrovsky v. Chase Paymentech*,
    No. 12 CIV. 0704 (AJN), 2012 WL 13042574 (S.D.N.Y. Oct. 15, 2012) ................. 8

**Rules**

F.R.C.P. 12(b)(6) ............................................................................................... 1, 7, 12

Defendants Creative Media Finance Corp. ("**Creative**") and Jason Cloth (collectively "**Defendants**") respectfully submit this memorandum of law in support of their motion, pursuant to F.R.C.P. 12(b)(6), to dismiss the Amended Complaint filed on **April 6, 2021** by Plaintiff Preserver LP. ("**Preserver**" or "**Plaintiff**").

## PRELIMINARY STATEMENT

This is a motion to dismiss a fourteen paragraph Amended Complaint, alleging a breach of a purported loan agreement between the parties. According to the Amended Complaint, Plaintiff loaned $2,500,000 to Defendants, and Defendants failed to repay by the repayment date set forth in the Financing Term Sheet ("**Term Sheet**"). The Amended Complaint contains no other allegations.

Yet, the unambiguous terms of the contract documents, which Plaintiff annexed to the Amended Complaint, entirely contradict this threadbare version of the parties' relationship. Indeed, the contract documents plainly provide that the parties did not enter into a loan agreement at all. Rather, the Plaintiff purchased from Creative a participation interest in a loan that Creative tendered to a third-party for the production of the film Bombshell. In return, Plaintiff received the right to a waterfall of the pro-rata share of the gross receipts from the film that were to be distributed to Creative by a third-party collections agent, provided that the conditions of the waterfall were triggered. In the contract documents, Plaintiff expressly acknowledged the risk of this arrangement and that repayment of its participation was not guaranteed. Thus, Plaintiff's allegations that Creative breached its obligation to repay a loan are not plausible and cannot survive a motion to dismiss.

And even if the participation agreement were a loan agreement, Plaintiff's allegations still fail. The Amended Complaint does not—and cannot—allege (i) that Plaintiff's waterfall under

1

the participation was triggered and (ii) that Plaintiff was otherwise entitled to any payment under the participation agreement. In fact, documentary evidence establishes that the film was not commercially successful, and that, aside from one distribution, neither Creative's nor Plaintiff's were entitled to any payment under the operative agreements. Because Plaintiff fails to plausibly allege that it was entitled to payment under the participation agreement—regardless of whether it is a loan—the Amended Complaint should be dismissed for failing to state a claim.

## BACKGROUND[1]

### A. The Allegations of the Amended Complaint.

According to the fourteen paragraph Amended Complaint, Plaintiff and Defendants are parties to a Financing Term Sheet ("Term Sheet" or "T.S."), a copy of which is annexed to the Complaint. Am. Cplt. ¶ 8. Plaintiff asserts that the "express provisions of the Term Sheet" detail a $2,500,000 loan from Plaintiff to Creative that both Defendants jointly agreed to repay with 15% interest by no later than November 27, 2020 (the "Repayment Deadline"). *Id.* ¶¶ 9-10. If the loan is not repaid by the Repayment Deadline, then the Defendants were to incur default interest at 1.5% per month until the loan is repaid. *Id.* ¶ 11. Plaintiff alleges that the Repayment Deadline came and went, and Defendants failed to fully repay the loan, thus entitling Plaintiff to damages in the amount of the unpaid loan balance plus interest pursuant to the Term Sheet. *Id.* ¶ 12-14.

### B. The Documents Annexed to the Complaint.

The documents annexed to the Complaint tell a markedly different version of the parties' relationship.

---

[1] For the purposes of this motion, Defendants rely on Plaintiff's allegations but do not concede that those allegations are true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

*The Participation Agreement*. On November 27, 2019, Plaintiff and Creative entered into a Participation Agreement.[2] The Participation Agreement explains that Creative loaned to non-party Lucite Desk LLC $15,393,011 (the "Loan") for the production of the film Bombshell, and that Plaintiff acquired from Creative "an undivided fractional interest in the Loan." P.A. ¶ 1, C. The Participation Agreement provides that the relationship between Plaintiff and Creative is that of buyer and seller, respectively, not a debtor-creditor relationship:

> [Creative] sells to [Plaintiff] and [Plaintiff] hereby agrees to purchase from [Creative] an undivided fractional interest in the . . . Loan (the "**Participation**"). The Participation will be pro rata based on the amount offered by [Plaintiff] (hereinafter referred to as the '**Participation Advance**") as a percentage of the total amount offered by [Creative] to [Lucite] under the Loan.
>
> The relationship between is the parties is further elaborated as "*that of a seller and purchaser* in an undivided fractional interest (i.e., an outright sale and assignment by [Creative] to [Plaintiff] of an interest therefor), *not a debtor-creditor relationship*. *Id.* (emphasis added).

P.A. ¶ 1 (emphasis added).

Accordingly, the Participation Agreement expressly states that Creative does not guarantee any repayment to Plaintiff:

> [Creative] has not guaranteed repayment to [Plaintiff] of, nor agreed to repurchase from [Plaintiff], any portion of the Participation at any time.

*Id.* Moreover, Plaintiff acknowledges the "risks inherent in developing, producing, and marketing [Bombshell]" and that it may not recoup its Participation:

> [Plaintiff] further acknowledges the risks inherent in making loans and/or equity investments in the Picture and the related risks inherent in developing, producing, and marketing the Picture, including but not limited to the possibility of cost overruns, lower

---
[2] "Participation Agreement" or "P.A." refers to the Creative Wealth Media Finance Corp. The Participation Agreement, which is contained on PDF pages 8 through 16 of Exhibit A to the Amended Complaint and can be found at ECF Doc. No. 1-1.

3

> sales than anticipated and loss of financing. [Creative] makes no representation or warranty as to the commercial release of the Picture or the amount of proceeds, if any, to be received from exploitation of the Picture. ***There is no assurance that [Plaintiff] will earn a profit from or recoup its Participation.***

*Id.* ¶ 8 (emphasis added).

The Participation Agreement merely provides that Plaintiff agrees to participate, to the extent of its participation, in the pro rata share of the amounts recovered from Lucite under the Loan (referred to as "Collections") and the adjusted gross revenues derived from the exploitation of Bombshell (referred to as "Adjusted Gross Receipts," or "Collected Gross Receipts"), in accordance with Schedule A of the Participation Agreement. Schedule A of the Participation Agreement is the Term Sheet addressed below. *Id.* ¶¶ 2-3. P.A. ¶ Recital C.

Such collections were not to be distributed to Plaintiff by Creative; rather, the Participation Agreement provides that "[a]ll Collections and/or Payments due to [Plaintiff] with respect to [Plaintiff's] interest in the Loan, shall be paid to [Plaintiff] directly by collection agent." *Id.* ¶ 3.

***The Term Sheet***. The recitals to the Term Sheet explain that Creative is a financier of the film Bombshell and that Plaintiff agreed to participate in that financing pursuant to the terms of a Participation Agreement. The Term Sheet states that Plaintiff provided a $2,500,000 "Participation Advance" to partially fund Creative's financing of Bombshell. T.A. at 1. In return, Plaintiff would receive a "fixed rate of return of 15 per cent (15%)" on the Participation Advance. *Id.* at 2. The Repayment Date of the Participation Advance was "on or before the later of: (i) one (1) year from the date hereof, or (ii) 90 days after the Picture is released to the public (the 'Repayment Date')." In the event the Participation Advance is not repaid by the Repayment Date, Plaintiff "shall be paid additional interest of 1.5% per month… on the entire outstanding balance, until such time as all amounts due are fully repaid." *Id.*

4

The Term Sheet provides that any proceeds paid to Plaintiff shall be derived from all "adjusted gross receipts (i.e., after distribution fees, expenses, CAM fees, residuals and sales agent (fees) derived from exploitation of the Picture and ancillary rights worldwide." *Id.*, p. 2. The Term Sheet elaborates that the collection agent is responsible for the distribution of the Adjusted Gross Receipts derived from the film. T.S. at 1 (under "Condition Precedents" and "Disposition of Gross Receipts")

Nowhere in the Term Sheet is the Participation Advance referred to as loan.

**C. Additional Operative Agreements**

*Master Term Sheet*. Attached as Schedule A to the Term Sheet is the "Master Term Sheet" ("M.T.S.") between Creative and Lucite Desk LLC for the production of Bombshell.[3] The Master Term Sheet is likewise referenced in Recital A of the Participation Agreement: "a true copy of said Master Term Sheet having been delivered to [Plaintiff], and [Plaintiff] having independently reviewed and approved same." T.S., p. 1.

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

---

[3] The version of the Term Sheet annexed as Exhibit A to the Amended Complaint did not attach a copy of the Master Term Sheet. However, a placeholder for the Master Term Sheet is contained on PDF page 5 of the exhibit. A true and correct copy of the Master Term Sheet is annexed to the Affidavit of Jason Cloth in Support of Defendants' motion to dismiss the Amended Complaint ("Cloth Aff.") as Exhibit 1.

██████████████████████████████████████████████████████
█████████████

*CAMA*. The CAMA was executed on July 15, 2020 between FCAM, Creative, Lucite, and various non-parties.[4] The parties to the CAMA agreed to appoint FCAM "as their sole and exclusive agent to administer the collection and distribution of Collected Gross Receipts[.]" CAMA at 2. Both Plaintiff and Creative are named as beneficiaries under Schedule 4 of the CAMA. CAMA at 15-16. ████████████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████ █████████

Under the CAMA, FCAM is obligated to issue account statements to the parties and make distributions in accordance with the waterfall, provided that there are sufficient Collected Gross Receipts. CAMA ¶¶ 2.4, 3.2.[6] From the inception of the transaction to date, FCAM has issued one account statement through July 31, 2020.[7] The account statement demonstrates ███████ ██████ in Collected Gross Receipts has been received, of which $239,288.95 was distributed to Preserver in accordance with the waterfall.

---

[4] A true and correct copy of the Collection Account Management Agreement is attached to the Cloth Aff. as Exhibit 2.

[5] ████████████████████████████████████████████████████████████████

[6] Citations to specific paragraphs of the CAMA refer to the numbered paragraphs beginning on PDF page 21 of the CAMA.

[7] A true and correct copy of Collection Statement No. 1 annexed to the Cloth Aff. as Exhibit 3. Furthermore, a screenshot from the FCAM Dashboard, a true and correct copy of which is annexed to the Cloth Aff. as Exhibit 4, reveals that Collection Statement No. 1 was the latest statement issued.

**LEGAL STANDARD**

To survive dismissal under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.,* and cannot rely on mere "labels and conclusions" to support a claim, *Twombly,* 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

To this end, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" or that are "integral to the complaint" in its analysis. *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010). When a document "contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Grp. Inc.,* No. 11 Civ. 559 (LTS), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012); *Owolabi v. Bank of Am.,* 18-CV-3991 (AJN), 2019 WL 463849, at *2 (S.D.N.Y. Feb. 6, 2019).

**ARGUMENT**

**I. Plaintiff Fails to State a Claim for Breach of a Loan Agreement**

Plaintiff's allegation, that because its $2.5 million Participation in the Loan was not repaid by the Repayment Date, Defendants breached their obligations under the Term Sheet is plainly contradicted by Participation Agreement and the Term Sheet. "Under New York law, a breach of

contract claim requires '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Balk v. New York Inst. of Tech.*, 683 F. App'x 89, 95 (2d Cir. 2017) (citation and internal quotation marks omitted).

In interpreting a contract, the Court's primary objective "is to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000). "The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014) (internal quotation marks, citation, and alterations omitted). "A court may not, in the guise of interpreting a contract, add or excise terms or distort the meaning of those used to make a new contract for the parties. *Riverside S. Plan. Corp. v. CRP/Extell Riverside, L.P.*, 60 A.D.3d 61, 66 (1st Dep't 2008), aff'd, 13 N.Y.3d 398, 920 N.E.2d 359 (2009).

As an initial matter, the Participation Agreement appends the Term Sheet as Schedule A and incorporates the terms therein (and vice versa), so the documents must be construed together. *See Wendrovsky v. Chase Paymentech*, No. 12 CIV. 0704 (AJN), 2012 WL 13042574, at *3 (S.D.N.Y. Oct. 15, 2012). ("In order for an incorporation by reference to be valid and enforceable, the contract must make clear reference to the incorporated document and describe it in such terms that its identity may be ascertained beyond doubt.") (citation and internal quotation marks omitted).[8]

---

[8] For the same reason, the Master Term Sheet and the CAMA should be construed together with the Participation Agreement and the Term Sheet. The Master Term Sheet is annexed as a schedule to the Term Sheet, and the CAMA is created pursuant to the terms of the Master Term Sheet, and expressly lists Preserver as a beneficiary.

The unambiguous terms of the Participation Agreement clearly indicate that Plaintiff did not loan funds to Creative; it purchased from Creative an "undivided fractional interest" of the Loan that Creative made to Lucite to finance the production of Bombshell. P.A. ¶ 1; T.S. at 1. The Participation Agreement expressly provides that the relationship between the parties is that of a buyer and seller, "not a debtor-creditor relationship." P.A. ¶ 1. Courts interpreting participation agreements agree: "A participation is not a loan." *Natwest USA Credit Corp. v. Alco Standard Corp.*, 858 F. Supp. 401, 407–08 (S.D.N.Y. 1994). Generally speaking, "a participation is a contractual arrangement between a lender and a third party whereby the third party, labeled a participant, provides funds to the lender; the lender utilizes the funds to make its loans to the borrower." *Id.*

Plaintiff fully understood that there was no guarantee it would recoup its Participation or any interest by expressly acknowledging that:

(1) "[Creative] has not guaranteed repayment to [Plaintiff] of, nor agreed to repurchase from Financier, any portion of the Participation at any time." P.A. ¶ 2.

(2) "There is no assurance that [Plaintiff] will earn a profit from or recoup its Participation." *Id.* ¶ 8.

The Term Sheet also contradicts Plaintiff's allegations. The Term Sheet merely provides that Plaintiff agreed to participate in Creative's financing of Bombshell by providing a $2,500,000 "Participation Advance." T.S. at 1. In return, Plaintiff would receive 15% interest from the Adjusted Gross Receipts "on or before the later of: (i) one (1) year from the date hereof, or (ii) 90 days after the Picture is released to the public." *Id.* at 2. In the event the Participation Advance is not repaid by the Repayment Date, Plaintiff was merely entitled to an "additional interest of 1.5% per month… on the entire outstanding balance, until such time as all amounts due are fully repaid."

9

*Id.* Thus, at most, Plaintiff is entitled to an additional 1.5% in interest, not a guaranteed repayment, as the Participation Agreement expressly states.

Construing the Repayment Date as a loan maturity date, which is what the Amended Complaint effectively pleads, would require the Court to completely ignore Paragraph 2 of the Participation Agreement and, critically, Plaintiff's representation that it understood that it might not recoup its Participation. P.A. ¶ 8. The Amended Complaint thus fails to explain how Plaintiff was entitled to repayment of a non-guaranteed participation interest in a loan. Instead, Plaintiff only offers the conclusory allegation that Defendants have "breached the Term Sheet by failing and refusing to timely repay the Loan Repayment Amount Plaintiff."

Absent from the Amended Complaint is a single allegation about how or why this non-guaranteed participation suddenly became a guaranteed loan. In other words, Plaintiff fails to plead any factual content that would allow the Court to draw a reasonable inference that Creative breached the Term Sheet or the Participation Agreement. *See Iqbal,* 556 U.S. at 678 (2009). As such, the Amended Complaint must be dismissed for failing to state a claim upon which relief can be granted.

II. **Even if the Participation Agreement Were a Loan Agreement, Plaintiff Still Fails to State a Claim for Breach of Contract for Nonpayment**

Even if the Participation Advance were a loan (which it is not), Plaintiff fails to plead that it was not paid in accordance with operative documents. The Term Sheet and Participation Agreement are clear that payment to Preserver is only triggered from the Adjusted Gross Receipts. The Participation Agreement provides that Plaintiff agrees to participate in its pro rata share of the amounts recovered from Lucite under the Loan and the adjusted gross revenues derived from the exploitation of Bombshell. *Id.* ¶ 2. P.A. ¶ Recital C. The Term Sheet provides that any proceeds paid to Plaintiff shall be derived from all "adjusted gross receipts (i.e., after distribution fees,

expenses, CAMA fees, residuals and sales agent (fees) derived from exploitation of the Picture and ancillary rights worldwide." *Id.*, p. 2.

The CAMA sets forth the waterfall pursuant to which all parties, including Preserver, are to receive proceeds from the Collected Gross Receipts. CAMA ¶ 3.1, 3.2. These distributions are made by FCAM, the parties' appointed collection agent. To date, FCAM has distributed the only Collected Gross Receipts that it was able to ▮▮▮▮▮▮▮▮ of which $239,288.95 was distributed to Preserver, which Preserve admits in the Amended Complaint. *See* Cloth Aff., Ex. 3 and 4. Am. Cplt. ¶¶ 12-14.

Because no other Collected Gross Receipts have been collected by FCAM, no other distributions are triggered under the CAMA, the Participation Agreement or the Term Sheet, vitiating Preserver's argument that it is entitled to the full $2.5 million at this time. Indeed, the Amended Complaint is completely devoid of any allegations that the waterfall (a) was even triggered in the first instance; and (b) is being improperly withheld from Plaintiff.

Plaintiff, instead, only provides the threadbare allegation that it has not yet been fully repaid its Participation. And the reason for this deficiency is clear from the Collection Statement and FCAM Dashboard: the film simply has not generated enough revenue to trigger the parties' waterfall. Not only has does the Amended Complaint fail to allege a plausible claim for non-payment under a purported loan agreement, but documentary evidence also demonstrates that such a claim cannot be plausibly alleged at this juncture. Therefore, the Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice the entirety of the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: New York, New York
      May 21, 2021

**HERRICK, FEINSTEIN LLP**

By: */s/ Shivani Poddar*
William R. Fried
Shivani Poddar
Joshua S. Stricoff
Two Park Avenue
New York, New York 10016
(212) 592-1400

*Attorneys for Defendants Creative Wealth Media Finance Corp. and Jason Cloth*

HF 13825342v.6