UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

PRESERVER, LP,

                      Plaintiff,

-v-

CREATIVE WEALTH MEDIA
  FINANCE CORP. and JASON CLOTH,
                      Defendants.

21-CV-2456 (JPO)

OPINION AND ORDER

---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

    Plaintiff Preserver, LP brings suit against Defendants Creative Wealth Media Finance Corp. ("Creative") and Jason Cloth ("Cloth"), alleging breach of contract. (Dkt. No. 13.)

    Defendants have moved to dismiss Preserver's amended complaint, contending that Preserver has failed to state a claim upon which relief can be granted. (Dkt. No. 21.) For the reasons that follow, Defendants' motion is denied.

**I.    Background**

    **A.    Factual Allegations**[1]

    Defendants entered into an agreement with a third party to partially fund the movie "Bombshell." (Dkt. No. 13, Ex. A at p.1.) Specifically, Defendants agreed to extend a loan of over $15 million to the third party in October 2018. (Dkt. No. 13, Ex. A at p.8.) Plaintiff and Defendants then entered into a written contract — the Financing Term Sheet — on November 27, 2019. (Dkt. No. 13, Ex. A at p.1.) The Financing Term Sheet provides that Plaintiff "agreed to advance a portion of [Defendants'] financing obligations." (Dkt. No. 13, Ex. A at p.1.) Under

---

[1] The following facts, drawn from the amended complaint and the exhibit attached to it, are presumed true for the purposes of this opinion and order.

the "Funding" section, the contract provides that $2,500,000 (the "Participation Advance") would be advanced by Plaintiff to Defendants as a "loan participation." (Dkt. No. 13, Ex. A at p.1.) Under the "Term" section, the agreement provides that the Participation Advance "shall be repaid on or before the later of (i) one (1) year from the date hereof, or (ii) 90 days after ["Bombshell"] is released to the public." (Dkt. No. 13, Ex. A at p.2.) The Financing Term Sheet further provides that Plaintiff is entitled to a fixed rate of return of 15% on the Participation Advance and interest if the Participation Advance is not repaid according to the terms agreed to by the parties. (Dkt. No. 13, Ex. A at p.2.) The contract also states that Plaintiff is entitled to recoup the Participation Advance and additional interest from the movie's gross receipts. (Dkt. No. 13, Ex. A at 2.)

Attached to the Financing Term Sheet is Schedule C, the "Participation Agreement," which is incorporated by reference into the Financing Term Sheet. (Dkt. No. 13, Ex. A at p.7.) The Participation Agreement provides that Plaintiff agrees to purchase from Defendants an "undivided fractional interest" in Defendants' loan to the third party. (Dkt. No. 13, Ex. A at p.8 ¶ 1.) This creates a seller-purchaser relationship, "not a debtor-creditor relationship," and Defendants have "not guaranteed repayment to [Plaintiff] of, nor agreed to repurchase from [Plaintiff], any portion of the [Participation Advance] at any time." (Dkt. No. 13, Ex. A at p.8 ¶ 1.) The Participation Agreement also explains that Plaintiff will be repaid by the adjusted gross revenues derived from the distribution of the movie and "subject to the terms provided in Schedule 'A,'" which is the Master Term Sheet. (Dkt. No. 13, Ex. A at p.9 ¶ 3.) The Participation Agreement further acknowledges that Plaintiff understands that there is no assurance that it "will earn a profit from or recoup" its Participation Advance. (Dkt. No. 13, Ex. A at p.11 ¶ 8.)

To date, Plaintiff has received partial payment in the amount of $242,309.  (Dkt. No. 13 ¶ 13.)

### B.    Procedural History

On March 19, 2021, Plaintiff filed a complaint against Defendants in this Court.  (Dkt No. 1.)  The Court concluded that the complaint's allegations were insufficient to demonstrate the Court's subject-matter jurisdiction and directed Plaintiff to show cause why the complaint should not be dismissed or move to file an amended complaint that properly pleaded jurisdiction.  (Dkt. No. 6.)  On April 6, 2021, Plaintiff filed an amended complaint (Dkt. No. 13), and Defendants subsequently filed a motion to dismiss the amended complaint (Dkt. No. 21).  This Court did not stay discovery pending consideration of the motion to dismiss.  (Dkt. No. 31.)  There is a settlement conference scheduled before Magistrate Judge Barbara Moses on December 7, 2021.  (Dkt. No. 36.)

## II.   Discussion

### A.    Motion to Dismiss

The party facing a motion to dismiss under Rule 12(b)(6) must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In resolving a motion to dismiss, the court "must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)).

In their motion to dismiss, Defendants make the following arguments: (1) Plaintiff fails to state a claim for breach of a loan agreement because the terms of the Participation Agreement demonstrate that Plaintiff did not "loan" funds to Defendants but purchased from Defendants an "undivided fractional interest" of the loan Defendants made to the third party; and (2) even if the

3

Participation Agreement was a loan agreement, Plaintiff has failed to show that it was not paid in accordance with the terms agreed to by both parties.  Both arguments are addressed in turn.

### 1. Failure to State a Claim for Breach of a Loan Agreement

Under New York law, the elements of a breach of contract claim are: "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach."  *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC.*, 156 F. App'x 349, 350–51 (2d Cir. 2005) (citing *Marks v. N.Y. Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999)).

Defendants contend that "[t]he unambiguous terms of the Participation Agreement clearly indicate that Plaintiff did not loan funds to [Defendants]; it purchased from [Defendants] an 'undivided fractional interest' of the Loan that [Defendants] made to [the third party] to finance the production of Bombshell."  (Dkt. No. 22 at 9.)  Defendants argue that Plaintiff knew that there was no guarantee that it would recoup the $2.5 million or any interest, pointing to several provisions in the Participation Agreement that they contend indicate as such.  (Dkt. No. 22 at 9.)  Plaintiff, on the other hand, argues that the Financing Term Sheet demonstrates that its $2.5 million payment to Defendants was a loan — "Plaintiff agreed to advance the substantial sum of $2,500,000 to [Defendants] based on the understanding and agreement that the money would be paid back to Plaintiff within a year and with interest."  (Dkt. No. 28 at 5.)

The Court concludes that the meaning of the two agreements — the Participation Agreement and the Financing Term Sheet — is ambiguous.  Specifically, though the Participation Agreement provides that Plaintiff is not guaranteed repayment, the Financing Term Sheet puts in definite terms a repayment date and how repayment will be structured should Plaintiff not recoup the $2.5 million by the date determined by both parties.  Resolving the meaning of these competing provisions is not appropriate at the motion to dismiss stage.  *See,*

*e.g.*, *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005) ("[W]hen the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented."); *Crowley v. VisionMaker, LLC*, 512 F. Supp. 2d 144, 152 (S.D.N.Y. 2007) "[W]hen the language of a contract is ambiguous, its construction presents a questions of fact, which of course precludes summary dismissal." (citation and internal quotation marks omitted)).

### 2. Failure to State a Claim for Non-Payment

Defendants next argue that even if Plaintiff had provided a loan to Defendants, Plaintiff failed to plead that the loan has not been paid in accordance with the terms agreed to by the parties. (Dkt. No. 22 at 10.) Defendants rely on an extrinsic document — the Collection Account Management Agreement ("CAMA") — which sets forth the schedule to which all parties are to receive proceeds from Bombshell's gross revenue. (Dkt. No. 22 at 10–11.) They argue that "[b]ecause no other Collected Gross Receipts have been collected . . . , no other distributions are triggered under the CAMA, the Participation Agreement or the Term Sheet, vitiating [Plaintiff's] argument that it is entitled to the full $2.5 million at this time." (Dkt. No. 22 at 11.)

At the motion to dismiss stage, courts may "rely upon the documents attached to the complaint as exhibits [] and documents incorporated by reference in the complaint. Moreover, when a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss." *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 921 F. Supp. 2d 56, 70 (S.D.N.Y. 2013) (citations and internal quotation marks omitted). The CAMA was not attached as an exhibit or incorporated by reference in the Complaint, and it is not integral to Plaintiff's complaint, as

Plaintiff's claims arise from Defendants' alleged non-repayment, regardless of the amount of gross receipts earned by the movie. The Court therefore does not consider the CAMA in resolving Defendants' motion to dismiss.

### III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is DENIED.

Defendants shall file answers to the amended complaint within 21 days after the date of this opinion and order.

The Clerk of Court is directed to close the motion at Docket Number 21.

SO ORDERED.

Dated: November 9, 2021
      New York, New York

                                                   J. PAUL OETKEN
                                            United States District Judge